UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                         Plaintiff,

          v.

$7,877.61 UNITED STATES CURRENCY,

                        Defendant.

_____

DECISION & ORDER

09-CV-6306P

## PRELIMINARY STATEMENT

The United States of America has filed this civil in rem forfeiture action pursuant to 21 U.S.C. § 881(a)(6) seeking forfeiture of $7,877.61 in United States currency.  (Docket # 1). Claimant Harvey A. Bailey ("Bailey") has responded to the complaint, claiming an interest in the seized currency.  (Docket # 4).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge.  (Docket # 21).

Currently pending before the Court is the government's motion to dismiss pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  (Docket # 94).  For the reasons discussed below, the motion is granted.

## THE GOVERNMENT'S MOTION TO DISMISS

The government seeks to voluntarily dismiss the pending forfeiture action on the grounds that it is willing to return the seized currency to Bailey, subject to an administrative offset under the Debt Collection Improvement Act of 1996 ("DCIA") and the Treasury Offset

Program ("TOP").  (Docket ## 94 at ¶ 4; 95 at 2).  According to the government, Bailey owes a

delinquent child support debt of $11,820.26 to the Chemung County Department of Social

Services ("DSS"), and its repayment of the amount of the seized currency will be offset against

this debt.  (Docket # 95 at 2 and Exhibit ("Ex.") A).

        Bailey opposes the motion, contending that the return of the seized currency does

not constitute a federal payment subject to offset.  (Docket # 98 at ¶ 3).  Additionally, Bailey

maintains that the outstanding debt is not legally enforceable and that he has entered into an

agreement to pay the debt.  (*Id.* at ¶¶ 1-3).  Finally, Bailey maintains that the government failed

to timely commence this forfeiture proceeding.  (*Id.* at ¶ 4).

        In reply, the government represents that DSS has confirmed that as of January 22,

2016, Bailey continued to owe a child support debt of $11,820.26 and that Bailey had not

contacted the agency to arrange to pay the debt, in whole or in part.  (Docket # 99 at ¶ 2).  The

government further maintains that it timely commenced this forfeiture proceeding.  (*Id.* at ¶ 4).

        In response, Bailey maintains that he received a letter dated December 21, 2015,

from Senior Support Investigator Geraldine Foulke ("Foulke), a copy of which he has not

provided to the Court.  (Docket # 100 at ¶ 2).  Bailey alleges that Foulke stated that Bailey would

not be required to make set payments because he had no income, but should pay what he could to

lower his debt and notify her of his contact information upon release from incarceration.[1]  (*Id.*).

## A.    **Factual Background**

        On June 30, 2008, members of the Elmira Police Department executed a search

warrant at Bailey's residence.  (Docket # 1 at ¶ 5).  During the search, officers discovered and

seized $7,877.61 in currency.  (*Id.* at ¶ 7).  Bailey was charged and eventually convicted of

---

[1] On September 15, 2016, Bailey filed another submission unrelated to this motion.  (Docket # 104).

Criminal Possession of a Controlled Substance in the 3rd Degree with Intent to Sell and was

sentenced to seven years' imprisonment.  (*Id.* at ¶ 8).

On or about July 31, 2008, the seized currency was deposited into the Seized

Asset Deposit Fund ("SADF"), a holding account established by the Department of Justice

("DOJ"), after the seizure was accepted and adopted by the Drug Enforcement Administration

("DEA").  (Docket # 95-1 at ¶¶ 3-4).  Between September 10, 2008 and March 11, 2009, Bailey

filed several claims with the DEA seeking return of the funds.  (Docket # 99 at ¶ 4 and Ex. A).

Only Bailey's final claim, dated March 11, 2009, was deemed valid by DEA on March 25, 2009.

(*Id.*).  The government commenced this forfeiture action on June 12, 2009, and Bailey responded

to the complaint, claiming an interest in the seized currency.  (Docket ## 1, 4).

The parties engaged in discovery and settlement negotiations.  (Docket # 49 at

¶¶ 4-9, 11).  In the course of the settlement negotiations, the government offered to return the

seized currency to Bailey, subject to any delinquent debts he owed to either the United States or

any state.  (*Id.* at ¶ 11).  According to the government, its investigation had revealed that Bailey

owed a delinquent child support debt of $11,820.26 to DSS.  (Docket # 95 at 2 and Ex. A).

Bailey ultimately rejected the offer, maintaining that he wanted the seized currency to be

returned to him without any offset.  (Docket # 49 at ¶ 12 and Ex. C).  The government thereafter

filed a motion for summary judgment, which this Court denied.  (Docket # 92).  After the denial,

the Court scheduled a trial date status conference for this matter, which was held on November

12, 2015.  (Docket ## 92, 97).  The government filed the pending motion to dismiss on

November 4, 2015.  (Docket # 94).

**B.      The Government's Forfeiture Process**

The government has explained that where seized currency is ultimately forfeited, it is transferred from the SADF into a different account, the Assets Forfeiture Fund.  (Docket # 95-1 at ¶ 3).  Where the currency is not forfeited, the funds are returned through a payment made from the SADF.  (*Id.* at ¶ 5).  To effectuate a return of seized currency, the United States Attorney's Office must notify the United States Marshals Services ("USMS") to return some or all of the funds using a completed DOJ Unified Financial Management System form ("ACH Form").  (*Id.* at ¶ 6).  This form prompts the USMS to request the Department of Treasury ("Treasury") to make an electronic payment by completing and submitting a certified payment voucher to Treasury.  (*Id.*).  Treasury, prior to initiating a payment, subjects the funds to the offset program.  (*Id.*).

**C.      Discussion**

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, in the absence of a stipulation among the parties, an action may be dismissed at the plaintiff's request after an answer has been filed only by court order, "on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2); *see Shady Records, Inc. v. Source Enters., Inc.*, 371 F. Supp. 2d 394, 396 (S.D.N.Y. 2005).  Rule 41(a)(2) further provides that "[u]nless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."  Fed. R. Civ. P. 41(a)(2).  Generally, "[u]nless a defendant can demonstrate that he will show some plain legal prejudice, a district court should grant a motion of voluntary dismissal."  *United States v. One 1990 Artic Cat Ext Snowmobile*, 1996 WL 132107, *1 (S.D.N.Y. 1996).  The court has sound discretion, however, to determine whether to grant or deny a Rule 41(a)(2) motion to dismiss.  *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir.), *cert. denied*, 498 U.S. 899 (1990).

In evaluating whether to dismiss a claim under Rule 41(a)(2), "the relevant concern is whether the dismissal of the action will be unduly prejudicial to the defendant[]." *Cent. N.Y. Laborers' Health & Welfare Fund v. Fahs Constr. Grp., Inc.*, 2016 WL 1106445, *3 (N.D.N.Y. 2016) (internal quotations omitted); *Mercer Tool Corp. v. Friedr. Dick GmbH*, 175 F.R.D. 173, 175 (E.D.N.Y. 1997) ("[t]he primary purpose of Rule 41(a)(2) is to protect the interest of the defendant"); *Sec. & Exch. Comm'n v. Am. Bd. of Trade, Inc.*, 750 F. Supp. 100, 105 (S.D.N.Y. 1990) ("[a] voluntary dismissal may, at the discretion of the trial court, be granted if prejudice will not result to the other party").  Permission to dismiss an action pursuant to Rule 41(a)(2) "may be conditioned upon the plaintiff fulfilling whatever terms and conditions the district court, in its discretion, deems necessary to offset the possible prejudice that the defendant may otherwise suffer . . . , including a requirement that the dismissal be with prejudice."  *Shady Records, Inc. v. Source Enters., Inc.*, 371 F. Supp. 2d at 396 (internal quotations and citations omitted) (citing *Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir. 1988)).  Prior to dismissing an action with prejudice, however, the court must permit the movant an opportunity to withdraw its motion.  *See Gravatt v. Columbia Univ.*, 845 F.2d at 56 ("an opportunity to withdraw a motion for dismissal without prejudice must be afforded a plaintiff before the dismissal is converted to one with prejudice").  Generally, a defendant will be advantaged, rather than prejudiced, by a dismissal with prejudice.  *See Cent. N.Y. Laborers' Health & Welfare Fund v. Fahs Constr. Grp., Inc.*, 2016 WL 1106445 at *4 ("no matter when a dismissal with prejudice is granted, *it does not harm the defendant:* The defendant receives all . . . that he would have received had the case been completed") (quoting *Schwarz v. Folloder*, 767 F.2d 125, 129 (5th Cir. 1985)); *Sec. & Exch. Comm'n v. Am. Bd. of Trade, Inc.*, 750 F. Supp. at 105 ("[b]ecause the dismissal will be with prejudice, there can be no adverse effect on defendants here").

The government seeks to voluntarily dismiss this action to avoid the effort and expense of litigating the validity of the seizure of the currency. (Docket # 49 at ¶ 10) According to the government, it has determined that interests of efficiency weigh in favor of returning the seized currency rather than proceeding to trial. (*Id.*). Further, the government maintains that Bailey will not be prejudiced because the most he could hope to obtain from a verdict in his favor after trial is precisely what the government is offering now – a return of the seized currency. (Docket # 94 at ¶ 4). Thus, the government maintains, Bailey stands to gain nothing from proceeding to trial, but stands to lose his interest in the currency if the government prevails at trial and the currency is forfeited to the United States. (*Id.*).

The government's submissions do not indicate whether it seeks dismissal with or without prejudice. (Docket ## 94-95, 99). Nevertheless, it has represented an intention to return the seized funds, which undoubtedly would prevent recommencement of this forfeiture action. In any event, this case has been pending for several years, discovery has been completed, dispositive motions have been filed and determined, the case is trial ready, and Bailey has objected to the request to dismiss. Under such circumstances, I conclude that any requested dismissal should be with prejudice. *See Shady Records, Inc.*, 371 F. Supp. 2d at 396 (granting motion to dismiss pursuant to Rule 41(a)(2) and determining dismissal should be with prejudice where the case was trial ready).

Having concluded that any dismissal should be with prejudice, the salient question for this Court is whether Bailey would be prejudiced if this action were dismissed with prejudice at this juncture. *See Sec. & Exch. Comm'n v. Lorin*, 869 F. Supp. 1117, 1119 (S.D.N.Y. 1994) ("[u]nder Rule 41(a)(2)[,] the essential question is whether the dismissal of the action will be unduly prejudicial to the defendant[][;] . . . [t]his rationale applies even when …

the plaintiff seeks a dismissal *with prejudice*") (internal quotations omitted). [2] Bailey has

opposed the dismissal on the grounds that he disagrees with the government's intention to offset

the seized currency against his apparent outstanding child support debt.  (Docket # 98 at ¶ 3).  In

essence, Bailey maintains that the government lacks the authority to offset the seized currency to

pay his past-due child support obligation.  I disagree.

An administrative offset is the "practice of withholding federal payment in

satisfaction of a debt." *Johnson v. U.S. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir.

2008) (quoting *Reeves v. Astrue*, 526 F.3d 732, 738 n.3 (11th Cir.), *cert. denied*, 555 U.S. 1072

(2008)); *see* 31 U.S.C. § 3701(a)(1) (defining administrative offset as "withholding funds

payable by the United States . . . to, or held by the United States for, a person to satisfy a claim").

"The Debt Collection Improvement Act of 1982, 31 U.S.C. §§ 3701 *et seq.*, authorizes the

Treasury Department to collect non-tax debts by withholding funds paid out by other federal

agencies." *Johnson v. U.S. Dep't of Treasury*, 300 F. App'x at 862 (internal quotation omitted).

Pursuant to the TOP, creditor agencies may certify outstanding debts to Treasury for offset.  *See*

*id*.  When that occurs, Treasury is required to offset amounts payable by the United States

against the certified preexisting debts.  *See* 31 U.S.C. § 3716(c)(1)(A) ("[e]xcept as otherwise

provided in this subsection, a disbursing official . . . *shall offset* at least annually the amount of a

payment which a payment certifying agency has certified to the disbursing official for

disbursement, by an amount equal to the amount of a claim which a creditor agency has certified

to the Secretary of the Treasury pursuant to this subsection") (emphasis added).

---

[2] In *Zagano*, the court considered other factors in determining whether to grant the plaintiff's motion *without* prejudice. *Zagano v. Fordham Univ.*, 900 F.2d at 14.  Because I find that any dismissal here should be granted *with* prejudice, I do not consider those other factors. *See Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006) ("where no possibility of relitigation at the instance solely of the plaintiff exists, the *Zagano* factors have little, if any, relevance").

To be eligible for administrative offset, the creditor agency with an outstanding claim against the debtor must first notify the debtor that the debt is subject to administrative offset and the debtor has the right to administrative review, and then certify to Treasury that the debt is past due and legally enforceable and the agency has complied with its notice requirements.  *See* 31 U.S.C. § 3716(c)(6); 31 C.F.R. § 285.1(d)(3).  When an outstanding debt is properly certified, Treasury must administratively offset the debt.  *See* 31 U.S.C. § 3716(c)(1)(A); *Johnson*, 300 F. App'x at 862 ("[i]f properly certified, the Treasury Department must administratively offset the debt"); *Hughes v. United States*, 2015 WL 4477961, *2 (E.D. La. 2015) ("[o]ffset is a mandatory, non-discretionary function"); *Curtin v. United States*, 2014 WL 2808601, *6 (M.D. Pa. 2014) ("Treasury is, by law, required to offset these payments against funds previously owed by persons who are now seeking recovery from the United States").

Eligible debts include those "owed to federal, state or local governments," *McDonald v. United States*, 2014 WL 1365931, *1 (M.D. Pa.), *report and recommendation adopted*, 2014 WL 2611722 (M.D. Pa. 2014); 31 U.S.C. § 3716(h) (TOP applies "with respect to any past-due, legally-enforceable debt owed to a [s]tate"), and specifically include outstanding child support obligations, *see* 31 C.F.R. § 285.1(b) ("[u]pon notification of past-due support either directly from a [s]tate which has entered into such an agreement or from HHS, disbursing officials of Fiscal Service or any other disbursing office of the United States shall offset Federal payments which are subject to offset under this section, to collect past-due support"); *see also* Exec. Order 13,019, 61 Fed. Reg. 51763 (Sept. 28, 1996) (instructing Treasury Secretary to "develop and implement procedures necessary for the Secretary to collect past-due child support debts by administrative offset"); *United States v. Bailey*, 775 F.3d 980, 981 (8th Cir. 2014)

(settlement proceeds to resolve forfeiture action properly offset by outstanding child support

obligation claimant owed to the State of Illinois); *Tavares v. United States*, 2014 WL 4351532,

*6 (M.D. Pa. 2014) ("once funds are subject to offset, payments under this [TOP] can then be

used to pay a wide range of debts owed by a federal prisoner, including child support

obligations"); *Curtin v. United States*, 2014 WL 2808601 at *5 (same).

      Funds subject to offset against outstanding child support obligations include "all

Federal payments" with the exception of several enumerated exceptions that are not pertinent to

this action. *See* 31 C.F.R. § 285.1(i). Pursuant to the regulations, amounts payable by the United

States to satisfy a judgment or a compromise settlement have been interpreted to be "Federal

payments" eligible for offset. *See United States v. $37,000 U.S. Currency*, 117 F. Supp. 3d

1064, 1067 (S.D. Ind. 2015) ("[t]he broad language of the regulation, which essentially

encompasses all payments made by federal agencies unless explicitly exempted, appears to

include the [settlement] payment made by the Treasury Department in this case"); *Hughes v.*

*United States*, 2015 WL 4477961 at *2 ("[s]ettlement funds constitute a federal payment")

(citing 31 C.F.R. § 285.5(e)(1)); *Curtin*, 2014 WL 2808601 at *6 ("[t]he regulations' inclusion of

moneys 'certified for payment pursuant to 31 U.S.C. 1304' . . . among the types of proceeds

which are subject to offset means [that settlement proceeds] . . . fall[] under 31 U.S.C. § 1304(a),

which includes compromise settlements in suits against the United States") (quoting 31 C.F.R.

§ 285.5(e)(1)).

      This Court further concludes that the return of seized currency or the value of

seized property that occurs to resolve a forfeiture proceeding, as here, constitutes a "payment" by

the federal government that is subject to administrative offset. As an initial matter, the currency

is being returned in order to resolve an ongoing forfeiture proceeding, and a judgment will be

entered dismissing this action with prejudice on the condition that the United States pay the

value of the seized currency to Bailey. *See United States v. Bailey*, 775 F.3d at 981 (rejecting

claim that 31 U.S.C. § 3716 does not apply to currency seized by the government; "[t]his

argument is without merit since [appellant] now seeks payment of a settlement amount and not

the seized lost currency"). As discussed above, settlements or judgments payable by the United

States are subject to offset.

Further, as the government has explained, the seized currency is no longer held by

the USMS, but has been deposited into a holding account. The only way for Bailey to receive

the value of the currency is for the USMS to request that Treasury make a payment to him. *See*

*United States v. $37,000 United States Currency*, 117 F. Supp. 3d at 1067 (settlement for return

of seized currency properly offset against outstanding child support obligation where "USMS

must request that a *payment* be made to [claimant] by the Bureau of Fiscal Services; it is not

simply that the USMS seizes then returns the money"); *United States v. Approximately $3,174.00*

*in U.S. Currency*, 928 F. Supp. 2d 1040, 1043 (E.D. Wis. 2013) (return of seized currency

pursuant to settlement agreement resolving forfeiture action subject to administrative offset; "[i]f

the U.S. Attorney's Office declines to prosecute or settles a civil forfeiture matter, it notifies the

[USMS] which, in turn, requests that the Treasury *make a payment* by completing a certified

payment voucher and submitting it to the Treasury for disbursement"; "there is no indication that

the seized property could be returned by means other than such a payment").

Although one court has held that the return of seized currency did not constitute a

"payment" subject to administrative offset, *see In re Return of Seized Property*, 2011 WL

3759702 (S.D. Cal. 2011), the facts before the court were different from those in this case

because the United States had not commenced a forfeiture proceeding. Because the government

had not initiated a forfeiture action, the court concluded that the movants were entitled to the

"return" of their property, an act that did not constitute a "payment." *Id.* at *2.  Here, forfeiture

proceedings have been initiated and the currency seized from Bailey may only be "returned"

through a process that includes a request for Treasury to make a payment in that amount.

Bailey also challenges the government's intention to offset the seized currency on

the grounds that he disputes the validity of the child support obligation and has made an

agreement to satisfy the debt.  (Docket # 98 at ¶¶ 1-3).  However, neither Treasury, nor the

government, has any "statutory authority over the debt, nor any role in determining whether or

not the debt was valid"; rather, once DSS "certifie[s] the debt to Treasury, Treasury [is] legally

obligated to offset" the payment to Bailey in satisfaction of the outstanding child support

obligation.  *See Johnson*, 300 F. App'x at 862.  To the extent Bailey challenges the validity of

the underlying debt, Bailey must direct his challenge to "the agency to which [he] owes the

debt."  *See Hughes*, 2015 WL 4477961 at *3.  Further, to the extent Bailey "believes that the

offset was made in error[,] his remedy is to pursue the administrative and legal process set by

statute for challenging the offset," rather than attempting to litigate the offset in this case.

*Tavares v. United States*, 2014 WL 4351532 at *8 ("the statute and regulations creating the

[TOP] provide ample due process protections to a [debtor] prior to an offset, and allow for

administrative review of any offset decisions, followed by judicial review of particular offsets, if

necessary"); *Benjamin v. United States*, 2014 WL 3900220, *5 (M.D. Pa. 2014) ("persons who

are dissatisfied with the application of a Treasury offset may pursue administrative procedures

established by statute and administered under implementing regulations, which provide due

process to debtors against whom offset is sought") (internal quotations omitted); *Curtin*, 2014

WL 2808601 at *8 ("to the extent that [the debtor] is aggrieved by the application of a Treasury

11

offset to his settlement funds, his relief lies through administrative proceedings or separate

litigation challenging that offset decision").

Accordingly, I conclude that the government's request to dismiss the action will

not prejudice Bailey.  A reduction or satisfaction of his child support debt is indeed a benefit to

Bailey, albeit not precisely the type he seeks.  *See Bailey*, 775 F.3d at 981 ("[t]he application of

the funds to his child support obligation resulted in a $2,500 financial benefit to him, albeit not

the one he seeks in this appeal"); *Tavares*, 2014 WL 4351532 at *6 ("the plaintiff has received

the benefit of this payment under the agreement, albeit in an indirect fashion, through the

reduction of the plaintiff's outstanding and pre-existing indebtedness"); *Curtin*, 2014 WL

2808601 at *4 ("the plaintiff has benefitted from his settlement agreement bargain, in that his

pre-existing and outstanding debts have been reduced").  Moreover, whether the government

voluntarily dismisses this action by returning the seized currency or whether Bailey is vindicated

at trial, the result will be the same – the government will offset its payment to Bailey against the

outstanding debt.  Finally, dismissal of the matter at this stage can only benefit Bailey because he

will save the effort and costs associated with a trial and avoid the risk that he will lose and the

currency be forfeited to the government without benefit to him.  Under these circumstances,

Bailey will not be prejudiced by a dismissal of this action with prejudice.  *See United States v.*

*One 2003 GMC Sierra 3500 Pickup Truck, VIN: 1GTJK33113F208636*, 2012 WL 2502695, *2

(E.D. Mich. 2012) (granting government's request to voluntarily dismiss forfeiture proceeding to

avoid expense of trial over claimant's objection where government agreed to pay to claimant the

net proceeds of sale of truck, which was the most that claimant could hope to recover after trial).

Bailey also maintains that this forfeiture proceeding is invalid because it was

commenced more than ninety days after he first filed a claim for the seized currency with the

DEA, presumably asserting a violation of 18 U.S.C. § 983(a)(3)(A), which requires forfeiture

proceedings to be commenced within ninety days after a claim is filed.  (Docket # 98 at ¶ 4).

The government maintains that it timely commenced the forfeiture proceeding by filing a

complaint within ninety days of acceptance of the first valid claim submitted by Bailey.  (Docket

# 99 at ¶ 4 and Ex. A).  Bailey has not challenged the validity of the government's rejection of

his previous claims, and nothing in the record suggests that the earlier claims were rejected in

bad faith.  *See United States v. $114,143.00 in U.S. currency seized from Michael J. Calash's

vehicle*, 609 F. Supp. 2d 1321, 1322 (S.D. Fla. 2009) ("ninety-day period should be tolled in

situations where the [g]overnment rejects a claim in good faith in connection with a forfeiture

proceeding") (collecting cases).  In any event, this argument, which Bailey did not raise in his

answer or assert through a motion, is not properly before the Court.  *See United States v. Wilson*,

699 F.3d 789, 792-97 (4th Cir. 2012) (claimant forfeited argument that government failed to

timely commence forfeiture proceeding where he did not timely raise it in forfeiture proceeding)

(citing *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1164 (4th Cir.) ("[i]t is well settled

that the defense of limitations is waived unless asserted promptly by way of answer or motion"),

*cert. denied*, 474 U.S. 946 (1985)), *cert. denied*, 133 S. Ct. 2401 (2013).


## CONCLUSION

For the foregoing reasons, the government's motion to dismiss this action

pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure (**Docket # 94**) is **GRANTED**,

and the government's complaint is dismissed with prejudice, on the conditions that the

government certify to the Court on or before **September 27, 2016**, that it consents to dismissal

with prejudice, and that the government pay to Bailey within ninety (90) days thereafter the

amount of $7,877.61, subject to the offset requirements of the TOP and the DCIA.  If the

government does not provide such certification, this motion to dismiss shall then be denied and

the case will proceed to trial.

**IT IS SO ORDERED.**


                                                                    _s/Marian W. Payson_
                                                                MARIAN W. PAYSON
                                                            United States Magistrate Judge


Dated:  Rochester, New York
           September 20, 2016